### Texas & New Orleans Railroad Company v. Texas Tram & Lumber Company.

Decided April 11, 1908.

#### 1.—Judgment—Entry Nunc pro Tunc—Appeal.

An appeal from a judgment which the record shows has not been entered in the minutes cannot be sustained. Therefore the perfecting of an appeal within due time after the entry of the judgment *nunc pro tunc* at a subsequent term is sufficient, and will give the Appellate Court jurisdiction.

#### 2.—Title by Limitation—Adverse Possession.

In order to entitle one to recover land by limitation title it is not necessary that the period of adverse possession should immediately precede the filing of

the suit; it is sufficient if the title has been acquired at any time theretofore by compliance with the statutory requirements.

### 3.—Trespass to Try Title—Sale Pending Suit—Evidence.

A party who, in fact, owns the land at the institution of a suit of trespass to try title to the same, may prosecute such suit to final judgment, even though he should sell his interest therein pending the suit. Evidence considered, and held insufficient to show that a party defendant who by plea of reconvention set up claim to the land in controversy, had sold the land prior to the institution of the suit.

### 4.—Appeal—Grouping Assignments—Practice.

It is a violation of the rules to present several assignments as one when such assignments raise issues not germane to each other; and, upon objection by the opposite party, assignments so grouped will not be considered on appeal.

### 5.—Evidence—Exclusion—Harmless Error.

The exclusion of evidence becomes harmless when, by reason of a correct charge of the court, such evidence would have been irrelevant if admitted.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*Baker, Botts, Parker & Garwood, T. D. Cobbs* and *Parker & Hefner,* for appellant.—The evidence wholly fails to furnish legally sufficient grounds for awarding, in the verdict, to the Texas Tram & Lumber Company title to any part of the land involved herein under either the five or ten years statute of limitation. Caplen v. Drew, 54 Texas, 496; Evitts v. Roth, 61 Texas, 84, 85; Anderson v. Jackson, 69 Texas, 347, 348; Hunnicutt v. Peyton, 102 U. S., 368, 369; Kane v. Sholars, 90 S. W., 940; Mhoon v. Cain, 77 Texas, 318; Whitehead v. Foley, 28 Texas, 289; Cantagrel v. Von Lupin, 58 Texas, 570; Chance v. Branch, 58 Texas, 493; Evans v. Templeton, 69 Texas, 378; Ward v. Cochran, 150 U. S., 606.

*Andrews, Ball & Streetman, Denman, Franklin & McGown, Greers & Nall* and *Oliver G. Todd,* for appellee.—The finding of the jury to the effect that the defendant had acquired title to all of block 25 south of the line $12\frac{1}{2}$ feet south from the middle of track of plaintiff's main line, and parallel with said middle line of said track was not only proper, but was the only finding which could have been reasonably made by the jury. Gunter v. Meade, 78 Texas, 634; Moore v. McCown, 20 S. W., 1112; Williams v. Rand, 9 Texas Civ. App., 631; Kimbro v. Hamilton, 28 Texas, 565; City of El Paso v. Fort Dearborn Nat. Bank, 96 Texas, 496.

Appellant's proposition is without merit: First, because this plaintiff, having prosecuted this suit against the Texas Tram, could not upon its own failure to show title to the land, defeat a recovery by the Tram, even though said company had sold out either before or during the pendency of the suit; and, second, because there is no testimony in the record that the Texas Tram was not the owner of this property at the time of this trial. Green v. Hugo, 81 Texas, 458; Jones v. Lee, 41 S. W., 195; Allen v. Worsham, 50 S. W., 157; Smith v. Rothe, 55 S. W., 754.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title brought by appellant against the appellee and W. C. Goslin to recover title and possession of a part of block 25 in the city of Beaumont. The land claimed by appellant is a strip two hundred and fifty feet in width lying on either side of main track of appellant's railroad through said block. In addition to general allegations of title appellant alleged title by continuous adverse possession and use of the property under a claim of ownership since 1859. Goslin filed no answer and judgment was rendered against him by default.

The defendant, Texas Tram & Lumber Company, pleaded general denial and not guilty, and specially pleaded limitation under the three, five and ten years statutes, as applied to "all of lots 648 and 649 and those parts of lots 645 and 650 lying south of the south ends of the ties of the main line of the Texas & New Orleans Railroad Company in said block 25," and further pleading in reconvention alleged fee simple title in itself by regular chain of conveyances from the Mexican Government to "all of block 25 of the original town of Beaumont, Texas, which lies south of the south end of the ties of the main line of the Texas & New Orleans Railroad Company at the place where it crosses said block 25," and further alleged that it, the said Texas Tram & Lumber Company, had been dispossessed by the plaintiff Texas & New Orleans Railroad Company, which, in the language of the defendant's answer, "now withholds from this defendant the title thereto," further alleging that plaintiff sought to cast a cloud upon its title, and praying judgment for title and possession, etc.

The trial in the court below by a jury resulted in the following verdict: "We the jury find as follows: The south boundary line of the T. & N. O. R. R. right of way to be one hundred and twenty-five feet south of the center of the main line of said railroad on block 25 and parallel to said main line. Also that the defendant has by limitation title to all of the property up to a line twelve and one-half feet from center of main line of T. & N. O. R. R. Co., and parallel to it on south side." Judgment was rendered in accordance with this verdict in favor of appellant for all of the land sued for, except that portion south of the line twelve and one-half feet south of and parallel with the center of the main track of appellant's road, and in favor of appellee for the land south of said line.

The appellant, as plaintiff below, proved its title to all the land sued for from the sovereignty, and the court so instructed the jury, further instructing them as follows: "Now, the only questions that are at issue before you, and which are to be determined by you under the instructions as herein given you, are: (1) the question of boundary line between plaintiff railroad company and defendant Texas Tram & Lumber Company's property; and (2) whether or not said defendant Lumber Company has acquired any part of the land claimed by plaintiff, embraced within the right of way of two hundred and fifty feet, by limitation."

The evidence shows that in 1880 the firm of Smyth & Seale took possession of the property claimed by appellee in this suit and occupied and used it as a lumber yard. There is testimony to sustain

the finding that this lumber yard covered the entire property from the south line of block 25 up to within a few feet of the main track of the railroad. Geo. W. Smyth, a member of said firm, testified in substance: That the actual lumber piles covered all the property in question except that which was covered by dolly-ways. That these dolly-ways were constructed in order to get the lumber to the piles. That they had what was called dolly-ways between the lumber piles so as to get to them with lumber. Said witness testified that they had lumber, as well as he could remember, within twenty-five or thirty feet of the track, and that they had a dolly-way between these piles of lumber and the track covering part of this twenty-five or thirty feet. That there was a ditch at the foot of the grade of the railroad, but that the dolly-way covered a part of this ditch. Witness further testified that this lumber was stacked fifteen or sixteen feet high all over this land, and was stacked in the usual way that saw-mills stack their lumber, and that same was piled on foundations built up eighteen or twenty inches from the ground. With reference to the construction of the dolly-ways, this witness testified that these dolly-ways were constructed by laying 6 x 8 timbers and laying plank on them. The 6 x 8 was placed on the ground or raised above the ground as they found necessary in order to give a level dolly-way. Witness further testified that Smyth and Seale claimed all the property covered by their lumber yard on this block.

The deed under which Smyth & Seale claimed described the land thereby conveyed as follows: "Lot 617 and 622 in block 19 and also lots 648 and 649 in block No. 25, this also includes all the land in said block lying south and east of the right of way of the T. & N. O. Railroad."

Lots 648 and 649 in block 25 are south of the railroad main track which runs across lots 645 and 650 in said block near the southern lines of said lots. The south line of the right of way of appellant, as found by the jury, would include in said right of way all of lot 649 and the greater portion of lot 648. The deed to the vendor of Smyth & Seale describes the land as "All that lot or parcel of ground, being part of block twenty-five, and south of the line of the Texas and New Orleans Railroad according to the plat or map of said town of Beaumont."

The firm of Smyth & Seale transferred and conveyed all of its property to the firm of Smyth and Caswell and thereafter in June, 1883, Smyth & Caswell conveyed to appellee, and in their deed of conveyance described the property as follows: "Also all the following lots in block No. 25, to wit: Lots No. 648 and 649 and those parts of lots 645 and 650 lying south of the Texas & N. O. Road."

The property was used by the appellee as general lumber yard until 1888 or 1889, and after that time and up to the filing of the suit it was used as a place for storing lumber for export. The evidence was conflicting as to the continual occupancy of all of the ground by appellee and its vendors as a lumber yard, and there is evidence that during the occupancy of Smyth and Seale and Smyth & Caswell, appellant had a side track on this property and exercised other acts of ownership thereover and the jury might have found from the

evidence that the use of the property by said firm was not adverse to appellant. Appellee has claimed the entire property since its purchase in 1883, and there is testimony to sustain the finding that prior to 1891 it had the whole property inclosed by a plank fence, and that said fence was kept up until the present fence was built shortly before the filing of this suit in August, 1901, and that it had used and occupied the property continuously for ten years before the filing of this suit.

Prior to the submission of this appeal appellee filed a motion to dismiss the appeal for want of jurisdiction. This motion is based upon the following facts:

This case was tried, verdict returned, and judgment rendered at the April term of the District Court of the Sixteenth Judicial District of Jefferson County, Texas, which term of court ended by operation of law on May 26, 1906.

On the said 26th day of May, 1906, after the return of said verdict, and rendition of said judgment, the plaintiff then and there, in open court, presented its motion for new trial, which motion was duly considered, passed on and overruled by the said court on said May 26 aforesaid, and the plaintiff then and there, in open court, excepted to the said action by said trial court, and then and there, on said 26th day of May, gave notice of appeal to this court, and was allowed twenty days after the adjournment of said court in which to file bills of exception and statement of facts, which notice of appeal was then and there duly noted by the court on the docket.

The verdict in the case was returned at three minutes past twelve o'clock, a. m., on the morning of May 27, according to railroad or standard time, but not later than 11:45, p. m. of May 26th according to sun time. After the return of the verdict, rendition of the judgment and overruling of the motion for a new trial, the court adjourned without having had the judgment entered in the minutes. At the next term of the court, on June 6, 1906, the appellee filed and presented a motion to have the judgment entered *nunc pro tunc* as of date May 26. This motion was resisted by appellant on the ground that the term of the court at which the case was tried had expired before the return of the verdict and rendition of the judgment and the court was therefore without jurisdiction to receive the verdict and render said judgment. The trial court refused the motion to enter the judgment *nunc pro tunc,* on the ground that the term had expired before the return of the verdict and the rendition of the judgment, and said proceedings were therefore void, and the case should stand upon the docket for trial. Upon application to the Supreme Court appellee obtained a writ of mandamus compelling the trial court to enter the judgment *nunc pro tunc.* The judgment was finally entered at the December term, 1906. Upon the entry of said judgment appellant again filed a motion for rehearing and said motion being overruled, gave notice of appeal and perfected its appeal within the time prescribed by law. The appeal was not perfected within the prescribed time from the original rendition of the judgment.

Appellant could not have sustained an appeal from a judgment which the record did not show to have been entered, and therefore was not required to perfect its appeal until the judgment was entered. So long as the judgment remained unentered there was no necessity of an appeal, and it seems to be settled that in such case the right of appeal dates from the entry of the judgment. Mills v. Paul, 30 S. W., 242; Bassett v. Mills, 89 Texas, 162; Henry v. Boutler, 26 Texas Civ. App., 387. The motion to dismiss the appeal is overruled.

The first and second assignments of error are presented together. The first assignment complains of the refusal of the court to instruct the jury to return a verdict for plaintiff for all of the land sued for, and the second assails the charge of the court in submitting the issue of limitation of five and ten years, on the ground that there was no evidence that the possession of the defendant was exclusive or was adverse to plaintiff. It follows from our fact findings before set out that these assignments can not be sustained.

In submitting defendants' pleas of limitation of five and ten years the trial court instructed the jury that in order for defendant to recover upon either of said pleas the jury must find from the evidence that the defendant had held the land adversely to plaintiff for the five or ten years next preceding the filing of the suit. This instruction was erroneous because defendants were not limited to the period next before the filing of the suit, but were entitled to recover by showing adverse possession and other requisites of title by limitation for the time prescribed by the statute, and it was not necessary that such period of limitation immediately preceded the filing of the suit. This error against the defendant, however, eliminates any question of the sufficiency of the evidence, or the deed under which Smyth & Seale claimed the land, to sustain title by limitation, and as we have before found, the evidence is sufficient to show adverse possession in appellee for more than ten years before the filing of the suit. The deed to appellee, we think, conveys all of the land in controversy and therefore supports the claim of title under the five years statute of limitation.

It is further contended under these assignments that the testimony shows that appellee does not now own any interest in the property and therefore judgment should have been rendered in appellant's favor. This contention is based upon the following statement from the record:

"Appellee's president, Emmett Fletcher, testified in its behalf on the trial as to the fence that was put up under his direction in 1900 as follows:

"Q. How long did that fence stay there? A. I think that fence stayed there up to the time we sold out, to the best of my recollection.

"Q. What year was that? A. In 1901.

"Q. You sold out the property and have no further interest in it? A. No, sir; have no interest in it."

It is not clear what is meant by the witness in the statement that "we sold out." There is nothing else in the record suggesting that the appellee had no interest in the property. This witness was fur-

ther asked whether the Texas Tram & Lumber Company had any further interest in the property, and his reply was as follow: "I do not know whether they are keeping up the charter or not. I do not know what they call it." We think a fair construction of this testimony as a whole indicates that the witness did not mean to say that appellee did not then own the property. This witness and other members of his family are shown to have been interested in the appellee company, and when he says "we sold out" it is probable he was referring to the interest held by his family in said company. But be this as it may, the evidence certainly fails to show that appellee had sold the property prior to the institution of the suit. It would be entitled to defend the suit and recover upon its plea of limitation if it had been shown that it sold after the suit was brought.

The third, fourth, fifth, sixth, seventh and eighth assignments of error are grouped and presented as one assignment. Two of these assignments of error complain generally of the charge of the court upon the issue of limitation without pointing out in what particular any portion of the charge is erroneous. The remaining four assignments complain of the refusal of the court to give special instructions requested by appellant. These special instructions presented separate and distinct issues to the jury and are in no way dependent upon or connected with each other. It is a violation of the rules to present several assignments as one when such assignments raise issues not germane to each other. The appellee objects to our considering these assignments and the objection must be sustained.

The ninth and tenth assignments complain of the refusal of the trial court to permit appellant to introduce in evidence the deposition of its witness, Wilbur Irwin. It is unnecessary to discuss the questions raised by these assignments, because the excluded evidence only related to the possession of the property prior to the year 1886, and, as before shown, under the charge of the court the issue of adverse possession by defendant was confined to the ten years next before the filing of the suit. Under this charge the excluded testimony would not have been material and therefore any error in excluding it was harmless.

We are of the opinion that the judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*